# GAINEY McKENNA & EGLESTON

ATTORNEYS AT LAW
e-mail: info@gme-law.com

| 95 ROUTE 17 SOUTH | 440 PARK AVENUE SOUTH |
| --- | --- |
| SUITE 310 | FIFTH FLOOR |
| PARAMUS, NEW JERSEY 07652 | NEW YORK, NEW YORK 10016 |
| TEL: (201) 225-9001 | TEL: (201) 225-9001 |
| FAX: (201) 225-9002 | FAX: (201) 225-9002 |

Please Reply to Paramus Address                    Please Reply to Paramus Address

November 18, 2016

**VIA ECF & FEDEX**
Magistrate Judge Douglas E. Arpert
Clarkson S. Fisher Federal Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

    Re: Plaintiffs' Submission on Discovery Disputes
       Fenwick, et al. v. Ranbaxy
       Case No.: 12-CV-07354-PGS-DEA
       Our File No.: 170.187

Dear Honorable Judge Arpert:

  Our law firm represents the plaintiffs' in the captioned class action case. Enclosed is the plaintiffs' submission on the discovery disputes in the case. It summarizes the insufficiencies in the defendants' interrogatory answers and discovery responses.

  The exhibits for this submission are also enclosed. The exhibits include a full set of the Defendants Initial Interrogatory Answers (Exhibit 1), the Defendants Initial Responses to the Requests for Production of Documents (Exhibit 2), Defendants' Supplemental Interrogatory Answers (Exhibit 3), and Defendants' subsequent letter with the production of documents (Exhibit 4). For your convenience, we are also submitting the specific Interrogatories and Answers that are in dispute as separate Exhibits (Exhibits 5 through 18). Finally, the documents that the defendants produced are being provided to the Court for reference as needed. (Exhibit 19 and Exhibit 20) Some of the documents are large spreadsheets that cannot be printed in their entirety. For some of the spreadsheets, only the first page was printed. A thumb-drive containing all of the spreadsheets produced will be sent to Your Honor.

  Some of the attachments are confidential documents, which are not being filed electronically. They are being sent to you via Fedex with the courtesy copy of our submission.

           Respectfully yours,

         GAINEY McKENNA & EGLESTON

           Barry J. Gainey

BJG/dxg

FENWICK, ET AL. V. RANBAXY PHARMACEUTICALS, INC., ET AL.
3:12-cv-07354-PGS-DEA

**PLAINTIFFS' SUBMISSION ON DISCOVERY DISPUTES**

Our law firm represents the plaintiffs in the captioned class action case. This submission addresses the insufficiencies in the defendants' interrogatory answers and discovery responses.

**Brief Summary of the Case and Important Issues Involved in Discovery**

The case involves the defendants' recall of 41 lots of their generic Lipitor pills. The pills were recalled because they contained glass particles. The recall of the contaminated pills was only at the retail level. The defendants refused to refund money to consumers who received the pills. This case seeks damages for the consumers who received the contaminated pills.

Before formal discovery began, the defendants disclosed some information to us by e-mail so that the parties could engage in settlement talks. The information the defendants disclosed included the following:
1) There were 41 lots of contaminated pills, which contained 480,425 bottles. There were 477,274 bottles of 90-pill bottles and 3,151 bottles of 500-pill bottles.
2) "No fewer than 400,201 bottles of Atorvastatin were returned through January, 2014."
3) "The 41 impacted lots were shipped to 36 customers (some wholesalers, and some chains). Ranbaxy anticipates that some bottles from those impacted lots would then have been distributed to individual stores, but does not have data for that downstream distribution."

In order to be certified as a class, we need to satisfy the ascertainability requirement contained in Third Circuit decisions. We also need to have a workable damages model. We need information from the defendants and from third-parties. From the defendants, we want to determine where they shipped the 80,224 bottles that were not returned. Then, from the wholesalers and/or retail level pharmacies, we want to be able to identify the consumers who received the contaminated pills, the amount paid out of pocket, and the retail value of the pills.

**Discovery Exchanged to Date**

We served Interrogatories and Requests for Production of Documents aimed at discovering the information noted above. The defendants have been uncooperative and have refused to provide narrative answers to the interrogatories. The following list shows how evasive and uncooperative the defendants have been:
1) The defendants only answered one interrogatory with a narrative answer. (Answer # 18 stated that their Initial Disclosure was prepared by defense counsel and reviewed by in-house counsel.) The defendants objected to the other interrogatories. For 6 of those 24 interrogatories, they promised to produce responsive documents, "if any, after a reasonably diligent, proportional search." They produced no documents with their interrogatory answers.
2) The defendants asserted objections that had no merit, such as objecting to the interrogatories as "premature because discovery is ongoing" and because they are "duplicative" of the Requests for Production of Documents (19 of the 25 interrogatories contained that objection).
3) The defendants' Answers also incorrectly stated that they "have identified . . . documents pursuant to Federal Rule of Civil Procedure 33(d)". In reality, they did not identify or produce a single document with their interrogatory answers.
4) On their responses to the Requests for Production of Documents, the only documents the defendants produced were insurance policies that they had previously produced.

The interrogatory answers were served on June 30th and we immediately advised the defendants that their answers were unacceptable. We demanded narrative answers, including information about the 36 customers to whom they shipped the 41 lots of contaminated pills. The parties met and conferred, after which the defendants supplemented three of their interrogatory answers. The supplemental answers were incorrectly numbered.[1] They all contained the same objections and the same two sentences as a narrative answer. The narrative was incomplete, non-responsive and evasive.

The defendants eventually produced 797 pages of documents. The cover letter stated that the documents were being produced in response to the plaintiffs' document requests. The letter did not state that the documents were being produced in response to the interrogatories pursuant to Rule 33(d). Later, the defendants claimed that the 797 pages of documents were also being offered in lieu of narrative answers to the interrogatories. We reminded the defendants that Rule 33(d) contains certain requirements before a party can opt to produce business records instead of answering interrogatories.[2] The defendants did not satisfy any part of Rule 33(d). The answers to the interrogatories cannot be determined by examining the documents produced by the defendants, the burden of ascertaining the answer is not substantially the same for either party, and the defendants did not specify the records that must be reviewed in sufficient detail to enable plaintiffs to locate and identify them as readily as the defendants. The document production is not a valid substitution for narrative answers to the interrogatories.

**General Comments on the Documents Produced by Defendants**

While some information can be pieced together from the defendants' documents, there is no certainty to it and none of the conclusions reached are binding on the defendants because they did not provide narrative answers. The documents are not presented in an orderly fashion, they do not follow any chronological order, and some attachments are missing or cannot be identified. There are no actual interrogatory answers from the defendants to be used at depositions, in motions, and at trial. Examples of the confusion and the problems include:
1) The defendants told us in e-mails before discovery that they shipped the 41 lots of recalled pills to 36 customers; however, the documents produced list 35 customers.[3]
2) The defendants told us previously that there were 480,425 bottles in the 41 lots of recalled pills; however, the documents produced seem to suggest that there were 514,394 bottles.
3) They previously told us that the 41 lots contained 3,151 bottles of 500 pills but the documents suggest that there were 4,358 of those bottles.

---

[1] The numbers of the supplemental answers do not correspond to the numbers of the interrogatories. For example, the first Supplemental Objection and Response is labeled "Interrogatory No. 1" but it is a supplement to the defendants' prior answer to interrogatory number 5. The other two supplemental answers have the same types of errors. That is unacceptable for obvious reasons. We requested that the errors be corrected but the defendants refused.

[2] In particular, Rule 33(d) states that:
(d) Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
   (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
   (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

[3] Page 532 appears to contain some information about who the pills were shipped to but a narrative answer is needed to clear up the contradictions, answer the questions, and explain the distribution process and the related records.

4) As for the pills that were returned, the documents contain some information but it cannot be pieced together with any kind of clarity. Documents appear to be missing. Some of the documents count the returned pills by the number of bottles while other documents refer to the number of pills. Some documents use the lot number and some use the NDC number. The recall notice used "lot numbers" but the documents refer to "batch numbers".
5) The defendants' Final Report to the FDA concludes that 400,201 bottles were returned to Inmar/Medturn Inc., a third party company who handled some of the recall. However, the report does not provide details on the number of bottles that Inmar/Medturn processed. Instead it provides the number of pills processed (25,321,263 pills). Thus, the documents produced do not answer the interrogatory about the details of the returned product by bottle.
6) The defendants had third-party companies working on the recall but they have refused to provide most documents and information relating to the third-party companies.
7) There are many spreadsheets in the documents that are not labelled or which cannot be identified with certainty. For instance, the defendants' Final Report to the FDA had numerous attachments which appear to include documents from the third-party companies but it is not clear if those attachments were provided or where they might be. Attachment 10d in the cover e-mail with their Final Report is described as "Inmar12.27.13-12.30.13 copy 4" but there is no document clearly labelled as Inmar's matching such a description. (In addition, if it is "copy 4", where are the first three copies?)
8) The defendants produced no reports or correspondence with Inmar/Medturn or Stericycle (another third party company) but instead only produced spreadsheets that are unclear and which are not responsive to the interrogatories.
9) The details of what the third-party companies did as part of the recall cannot be determined from the spreadsheets provided (assuming that the unlabeled spreadsheets provided are from the third-party companies). The defendants must provide narrative interrogatory answers.
10) The documents produced refer to the number of returns as of January 2014 and state that defendants expect future returns. Thus, the return information in the documents (if it could even be located and deciphered) is almost three years old.

### Specific Interrogatories that are in Dispute

Below is a discussion of the interrogatories that are in dispute. We grouped interrogatories together that involve similar or related issues. The Exhibit numbers to review the specific Interrogatories and Answers are noted.

**Interrogatories #5, #6, #8, and #19**
These four interrogatories ask for information about the 41 lots of recalled pills, including where and to whom they were distributed and sold.
Interrogatory # 5 (See Exhibit "5") asks the defendants to provide separately for each of the 41 lots, all information and documents that the defendants have about the distribution of the contaminated pills. It asks about the defendants' "customers" and it also asks about the consumers who ended up with pills from the 41 lots.
Interrogatory # 6 (See Exhibit "6") demands information about each of the 41 lots, including the number of bottles in each lot, a breakdown of the number of bottles by dosage, pill count, etc., which bottles were returned as part of the recall and who they were returned from, etc.
Interrogatory # 8 (See Exhibit "7") asks for the identities of the "customers" to whom they sold the bottles in the 41 lots of recalled pills as well as contact information and account information for them, etc.
Interrogatory # 19 (See Exhibit "8") asks about information that the defendants have about consumers who received pills from the 41 lots, including their identities and contact information.

The defendants initially provided no narrative answers to these interrogatories and no documents. Then they served supplemental answers for #5 and #19 that were incomplete and non-responsive. Finally, in an October 14th letter, they begrudgingly stated that "information responsive" to three of these interrogatories is available in the documents they produced. For interrogatory # 5, they referred to pages 130 to 132; for interrogatory # 6, they referred to pages 133 to 792 (which is 659 pages); and for interrogatory # 8, they referred to pages 130 to 548 (which is 418 pages). However, the defendants' reference to documents will not suffice as interrogatory answers for numerous reasons, including the following:
1) They did not comply with FRCP 33(d), as described in detail above;
2) The documents are unclear and contrary to the information the defendants previously gave to us, which is detailed above.
3) The supplemental answers for #5 and #19 say that they do not "maintain information" regarding individual consumers. That is insufficient. If they have the information, they must produce it regardless of whether they "maintain it in the ordinary course of business".

**Interrogatory # 12 and # 13**
Interrogatory # 12 (See Exhibit "9") asks about the defendants' computer systems and related issues. Interrogatory # 13 (See Exhibit "10") asks about what types of reports can be produced from those systems and in what formats. The information is important to class certification (particularly in light of defendants' failure to provide information about the 41 lots, their "customers", the bottles that were returned, etc.). The defendants have refused to answer these interrogatories.

**Interrogatory # 21**
Interrogatory # 21 (See Exhibit "11") asks about the defendants' dealings with Inmar. Inmar/Medturn is a third-party company that handled a large part of the recall process for the defendants. The defendants initially asserted some meritless objections (such as the interrogatory is "duplicative" of RPD # 34 and it asks for information that would be in Inmar's possession). We offered to narrow the interrogatory (so that it asks what information the defendants have about Inmar's interaction with consumers or with Ranbaxy's "customers" and specific details about the bottles and pills that those consumers or "customers" were involved with) but the defendants still refused to answer the interrogatory. It is clear that the information and documents that the defendants have relating to Inmar/Medturn is important to the case. Inmar/Medturn was very involved in the recall process and the interaction between the companies is relevant and discoverable. (The same argument applies to Stericycle, another third-party company used.)

**Interrogatory # 9 and # 10**
Interrogatory # 9 (See Exhibit "12") asks for information about the notice that the defendants gave to their distributors and retailers and for related information about how they arranged for the return of the 41 lots being recalled, all of which was referred to in their press release of November 28, 2012.
Interrogatory # 10 (See Exhibit "13") asks about anyone else that the defendants gave notice to, including government agencies, third-party payors, etc.
After initially objecting, the defendants' October 14th letter referred us to the documents that they produced. For interrogatory #9, they referred to pages 130 to 548 (which is 418 pages) and for interrogatory #10, they referred to pages 95 to 891 (which is 796 pages). For the same reasons stated above in the discussion of Interrogatories #5, #6, and #8, the defendants answer is insufficient and unacceptable. The notices that the defendants sent about the recall and the arrangements for the return of the pills is relevant and discoverable. The information will also help identify where the 41 lots went to, who they went to, which ones were returned, and related issues.

**Interrogatory # 15 and # 16**

These interrogatories (See Exhibits "14" and "15" respectively) ask about pricing issues at the wholesale/distributor level and at the consumer/retail level. In their September 2nd letter and in their October 14th letter, the defendants stated that they will provide a further response as to what, if any, pricing-related information defendants may provide. They have not done so.

**Interrogatory # 20:**
This interrogatory (See Exhibit "16") asks for information the defendants have about any private, public or government databases that exist which would help determine or track which retailers were in the distribution chain for the 41 lots and the consumers who received the pills. The defendants failed to answer most of the interrogatory and the answer they provided about not maintaining information regarding individual consumers is not responsive.

**Interrogatory # 1 and # 2**
These interrogatories (See Exhibits "17" and "18" respectively) ask about the person(s) who answered the interrogatories and about anyone who was consulted or provided information or documents. The interrogatory answers refer us to the Verification. The verification says that Daniel T. Martins of Sun Pharmaceutical Industries, Inc. has read the answers and is familiar with the contents thereof, which suggests that he does not have personal knowledge of the information. Local Rule 33.1(b) states if the person does not have personal knowledge, he must identify the person or the document that is the source of his information. Also, the verification states that "these responses were prepared with the assistance and advice of employees". We demanded the names of the "employees" and the defendants advised in a letter that "the other 'employees' referenced were Defendants' in-house counsel, Hunter Murdock". We would like a valid, corrected verification.

**Responses to Plaintiffs' Requests for Production**

The defendants' initial Responses to Plaintiffs' Requests for Production of Documents did not provide any documents. The defendants eventually produced 796 pages but the document production is unacceptable. We advised the defendants before their production that both sides must identify by bates-stamped numbers which documents respond to which Interrogatories and which Requests. The plaintiffs identified the documents they produced in that manner. The defendants should be ordered to do so as well.

## Stipulation Concerning ESI and Discovery

The final issue is the Stipulation concerning ESI and discovery. The parties exchanged proposed documents but disagreed on the content. We retained an ESI consultant to help solve the problem. With the consultant's assistance, we provided a new proposed Stipulation that addressed the issues raised by the defendants. We sent it to the defendants on September 30th and advised the defendants our consultant would be involved if the parties meet and confer. We followed up with the defendants. On October 20th and they advised that they agreed ESI vendors should be involved. We raised the issue again last week but they have not responded with a date.

Respectfully yours,

November 18, 2016

GAINEY McKENNA & EGLESTON

Barry J. Gainey, Esq. (7560)

*Attorneys for Plaintiffs*