# PATUNAS LAW LLC

Michael E. Patunas
mpatunas@patunaslaw.com

November 18, 2016

**VIA ECF**
Hon. Douglas E. Arpert, U.S.M.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *Fenwick, et al. v. Ranbaxy Laboratories, LTD., et al.*, No. 3:12-cv-7354 (PGS)

Dear Judge Arpert:

      This firm, together with Kirkland & Ellis LLP, represents the Defendants in the above-captioned matter. At the November 9, 2016 conference, the parties notified the Court that they were at an impasse on several discovery disputes, and the Court directed the parties to submit letter briefs detailing those disputes. (Dkt. 79.) This letter summarizes Defendants' discovery requests on which the parties have not reached agreement.

      Plaintiffs in this putative nationwide class action have asserted claims of unjust enrichment and breach of express and implied warranties resulting from the recall of the generic drug Atorvastatin in November 2012. (Dkt. 47.) The parties are proceeding with class certification discovery,[1] and Defendants have sought basic information to determine whether a class can be certified—such as the named Plaintiffs' purchasing history of Atorvastatin, proof of purchase for the recalled Atorvastatin, and information regarding the express and implied warranties Plaintiffs allege Defendants breached. This discovery bears directly on (among other things) Plaintiffs' ability to ascertain a class, show common issues, and establish a class-wide damages model.

      Plaintiffs objected to many of Defendants' discovery requests primarily on grounds that they are premature and/or not relevant. Defendants suspect these objections are actually due to Plaintiffs' inability to locate and provide the requested information. But Plaintiffs' inability to produce this information is itself relevant to whether Plaintiffs will be able to ascertain and prove a class—because if even the named Plaintiffs cannot produce threshold information to prove their own claims, it is difficult to see how members of a nationwide class could do so. Defendants thus respectfully request that the Court order Plaintiffs to produce responsive information and documents in response to the discovery requests below. To the extent Plaintiffs cannot provide such information or documents because they do not have them,

---

[1] The Court ordered the parties to bifurcate discovery into class certification and merits discovery, which would take place after the adjudication of Plaintiffs' motion for class certification. (Dkt. 71.)

**PATUNAS LAW** LLC

Hon. Douglas E. Arpert, U.S.M.J.
November 18, 2016
P a g e | **2**

they should be required to so state, rather than claiming such information is "irrelevant" or that producing it would be "premature."

### I. Plaintiffs' Interrogatory Responses and Related Document Requests.[2]

**Purchasing History and Out-of-Pocket Costs:** Interrogatory No. 1 and RFP No. 2 seek basic information about the Atorvastatin that Plaintiffs bought before, during, and after the November 2012 recall period, including the amounts each Plaintiffs paid for each purchase. (Ex. 1, Defs.' Interrogatories, at 4; Ex. 2, Defs.' RFPs, at 6.)  After several meet and confers, the parties generally agreed to a reciprocal discovery start date of January 1, 2012.  Plaintiffs still objected to this start date for Interrogatory No. 1 as burdensome and irrelevant, however, and they incorporated those same objections into their RFP response.[3]  Plaintiffs also objected that their "purchase of atorvastatin pills manufactured by other drug companies is not relevant." (*See, e.g.*, Ex. 3, Young Interrogatory Resp., at 5.)

Plaintiffs' relevance objections as to timing ignore the fact that the Complaint does not propose a specific temporal class period, and instead appears to reserve the right to bring claims based on Atorvastatin bought outside the recall period.[4]  Defendants disagree that Plaintiffs can assert any class period broader than the recall; but in any event, Plaintiffs cannot try to assert such a class but then refuse to provide corresponding discovery.  And even if Plaintiffs' proposed class were limited to the recall period, Plaintiffs' purchasing history before that period would still be discoverable, as would be their purchasing history of non-recalled Atorvastatin.  For example, Plaintiff Wardrett has failed to provide any documents or other evidence that she even bought the recalled Atorvastatin, beyond so asserting in her Interrogatory responses, nor could she recall what she had allegedly paid for the drug.  (*See* Ex. 5, Wardrett Supp. Interrogatory Resp. at 6-7.)  But the Third Circuit has "caution[ed] . . . against approving a method that would amount to no more than ascertaining by potential class members' say so," explaining that "simply having potential class members submit affidavits [that state they are properly within the class] may not be proper or just."  *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012).[5]

---

[2] Although Plaintiffs served separate interrogatory responses for Plaintiffs Fenwick, Safran, Wardrett, Young, and Harding (together, "Plaintiffs"), many parts of the responses (particularly the objections) are identical.  Thus, unless otherwise noted, these disputes apply to responses from all Plaintiffs.

[3] Plaintiffs did so despite providing purchasing information for one Plaintiff going back to April 2012, months before the recall.  (Ex. 3, Young Interrogatory Resp., at 5-6; Ex. 4, PLTF00027-30 (pharmacy records documenting these purchases, without limiting it to Ranbaxy purchases).)

[4] Dkt. 47, Compl. ¶ 39 (The proposed class is "composed of all persons in the United States who purchased and/or paid for (in whole or in part), certain bottles of the prescription drug Atorvastatin manufactured by the Ranbaxy defendants, ***including those that were part of the tainted batches and/or lots that the defendants voluntarily recalled*** on a retail level only.") (emphasis added).

[5] *See also Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3d Cir. 2013) ("to satisfy ascertainability," the plaintiff must, among other things, demonstrate that the proposed method "permits a defendant to

# Patunas Law LLC

Hon. Douglas E. Arpert, U.S.M.J.
November 18, 2016
P a g e | 3

Defendants are entitled to any evidence that would show whether named Plaintiffs are properly part of the purported class, and that would allow them to challenge Plaintiffs' Interrogatory responses. If Plaintiffs' purchasing history (as evidenced by, for example, receipts or bank statements) indicated they had exclusively bought generic Atorvastatin made by another drug manufacturer before the recall period, such evidence would potentially show that Plaintiffs did not buy the recalled Atorvastatin. The same conclusion could be drawn if Plaintiffs are unable to produce evidence of any purchasing history of Atorvastatin before, during, or after the recall period. And evidence of Plaintiffs' purchasing history (or lack thereof) is also certainly relevant to broader class certification issues—because if even the named Plaintiffs cannot prove that they actually bought the recalled Atorvastatin, it is difficult to see how other putative class members might eventually be able to make this showing.

**Communications About Recalled Atorvastatin:** Interrogatory No. 9 and RFP No. 13 seek documents and information concerning Plaintiffs' communications related to their use of the recalled Atorvastatin. (Ex. 1, Defs.' Interrogatories, at 6; Ex. 2 Defs.' RFPs, at 8.) Plaintiff Wardrett's, Harding's, and Young's responses state that they had "communicated with medical people about the contaminated and adulterated pills," but Plaintiffs have refused to provide information about the substance of those communications. (*See, e.g.*, Ex. 5, Wardrett's Interrogatory Responses, at 10; Ex. 6, August 23, 2016 Gainey Letter to Tishyevich, at 2.)[6]

Plaintiffs have argued that damages in this case are the "retail value of the pills in question if they were not contaminated and adulterated." (Ex. 8, Safran's Supp. Interrogatory Resp., at 5.) Any communications Plaintiffs may have had that show they continued taking Atorvastatin are relevant to Plaintiffs' damages theory, as well as to predominance, typicality, adequacy, and/or commonality under Rule 23. For example, under New Jersey law, the damages for breach of warranty are "the difference between the value of the defective goods and the value they would have had if they had been as warranted." *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 665 (N.J. 1985). In demanding the full retail price of the Atorvastatin, Plaintiffs assume that every bottle of the recalled Atorvastatin was worthless, but Plaintiffs ignore Defendants' right to adduce discovery that the product still retained some value.

**Plaintiffs' Decision to Continue Taking Atorvastatin:** Interrogatory No. 1 asks Plaintiffs to explain the basis for their decision to continue taking the recalled Atorvastatin, if they did so. Plaintiffs Safran and Hardin stated that they continued taking the Atorvastatin; however, Plaintiffs have refused to

---

challenge the evidence used to prove class membership"; declining to allow plaintiffs to "us[e] affidavits of class members attesting to their purchase of [the product at issue].").

[6] Plaintiffs have also stated that they will produce documents "that are discoverable and relevant to the issues in this case." (Ex. 7, Plaintiffs' Responses to RFPs, at 9.) Having objected to providing further information and merely saying they will produce "relevant" documents, Plaintiffs' answers are circular and confusing. Plaintiffs should respond with a description of the communications at issue and what (if any) documents Plaintiffs have actually agreed to produce.

# PATUNAS LAW LLC

Hon. Douglas E. Arpert, U.S.M.J.
November 18, 2016
P a g e | **4**

provide any further information beyond that fact. As with Interrogatory No. 9, this information is relevant to Plaintiffs' damages theory, as well as predominance, typicality, and commonality.

**Breach of Express and Implied Warranties:** Interrogatories Nos. 13-15 ask Plaintiffs to identify express or implied warranties they allege Defendants breached, and to provide information supporting Plaintiffs' contention that the Atorvastatin they bought was not merchantable. (Ex. 1, Defs.' Interrogatories Nos. 13-15.) RFP No. 19 similarly asks Plaintiffs to produce labels, package inserts, and marketing materials for Atorvastatin, as such materials may contain manufacturer information and representations. This information is plainly relevant to Plaintiffs' warranty claims. Plaintiffs have objected to providing it, however, contending that it is premature merits discovery. But the Supreme Court has acknowledged that the "rigorous analysis" required by Rule 23 "frequently" will "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). It is difficult to see how this Court could engage in any meaningful Rule 23 analysis down the line if Plaintiffs refuse even to identify the warranties that Defendants supposedly breached.

Moreover, courts have recognized that variations in state laws often create individualized issues that preclude certification of nationwide breach of warranty classes. *See, e.g.*, *Smith v. Merial Ltd.*, 2012 WL 2020361, at *5 (D.N.J. June 5, 2012) (nationwide warranty classes are "unwieldy" and "few . . . have been certified as class actions"). For instance, Plaintiffs' reliance on the seller's representation is an element of an express warranty claim under the law of New York (where Plaintiff Harding resides, Dkt. 47 ¶ 10), as well as the law of many other states. *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 272-73 (E.D. Pa. 2013). Again, if Plaintiffs refuse even to identify the express warranties, it is impossible for Defendants to determine which (if any) of the named Plaintiffs actually relied on such warranties—a basic inquiry that goes to commonality, typicality, and adequacy of representatives.

**Health Insurance Plan Information:** Interrogatory No. 17 and RFP No. 14 seek information and documents about Plaintiffs' health and prescription drug plans. Although certain of the named Plaintiffs provided the name of their insurer, Plaintiffs object to providing any further information in response to these discovery requests, contending that they do not relate to class certification. This is incorrect: the amounts Plaintiffs paid out-of-pocket for Atorvastatin versus the amounts paid by their respective insurers (and the extent to which these amounts and ratios differed between different Plaintiffs) are relevant to commonality and typicality under Rule 23(b), as well as to whether Plaintiffs will be able to prove damages by class-wide proof. Indeed, courts in this circuit have held that the "complex nature of the pharmaceutical and insurance industries" can lead to "[m]any individualized questions" at the class certification stage. *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005, at *12 (E.D. Pa. Nov. 12 2015) (identifying plaintiffs' co-pay amounts, amounts they were reimbursed by insurers, and any rebates factored into the consumer payment as individualized questions in an antitrust case brought by consumers and third-party payors who bought brand-name drug Provigil or its generic equivalent). And Plaintiffs' discovery responses to date already show significant variation on these issues among class representatives.

Plaintiffs have argued that providing out-of-pocket paid amounts obviates the need to provide health insurance information, but that information will not be enough to show variation between Plaintiffs' plans. For one, Plaintiffs seem to contend that they are entitled to recover the full retail price of

# PATUNAS LAW LLC

Hon. Douglas E. Arpert, U.S.M.J.
November 18, 2016
P a g e | **5**

Atorvastatin (as opposed to their out-of-pocket costs) because they paid insurance premiums.[7] While Defendants disagree with this argument, under Plaintiffs' view, the premiums Plaintiffs paid would be relevant to damages. Moreover, to the extent Plaintiffs intend to seek damages derived from payments made by insurers, Defendants are entitled to know how much of Plaintiffs' purchase was covered by health insurance plans, and whether Plaintiffs' health insurance plans would even permit such a recovery. Finally, variations in health insurance reimbursements also go to Plaintiffs' ability to propose a workable classwide damages model. Plaintiffs have argued that this damages issue will be addressed later, but that is wrong: to certify a class, Plaintiffs will have to prove that "damages are capable of measurement on a classwide basis." *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).

### II. Plaintiffs' Responses to Defendants' Requests for Production of Documents.

**Documents Relating to Plaintiffs' Answers to Interrogatories.** In their Responses and Objections to Defendants' RFPs, Plaintiffs incorporated their objections to Defendants' Interrogatories (to which Plaintiffs objected on numerous grounds). As a result, it is unclear what documents Plaintiffs have agreed to produce and what documents they intend to withhold based on their objections to the Interrogatories. Plaintiffs have produced thirty pages of documents at this point. Plaintiffs' objections and subsequent correspondence have provided little to no insight into what further (if any) documents Plaintiffs actually intend to produce, and what information and documents they are withholding based on objections. This is inappropriate. *See* Fed. R. Civ. P. Rule 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.").

\*   \*   \*

Defendants look forward to discussing these issues further with the Court during the January 9, 2017 conference. Please let us know if any further information may be helpful before then.

Respectfully,

*/s/ Michael E. Patunas*

Michael E. Patunas

cc: All Counsel of Record (Via ECF and email)

---

[7] Ex. 8, Safran's Supp. Interrogatory Resp., at 6 ("The plaintiff paid less than the retail value to the retailer/pharmacy and additional payment was made by an insurance company, a similar company, and/or a government agency. The plaintiff paid money to the other entity in order to be entitled to those payments on the plaintiffs behalf.")