# PATUNAS LAW LLC

Michael E. Patunas
mpatunas@patunaslaw.com

December 2, 2016

**VIA ECF**

Hon. Douglas E. Arpert, U.S.M.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: *Fenwick, et al. v. Ranbaxy Laboratories, LTD., et al.*, No. 3:12-cv-7354 (PGS)

Dear Judge Arpert:

This firm, together with Kirkland & Ellis LLP, represents Defendants in the above-captioned matter. This letter responds to Plaintiffs' letter to the Court (Dkt. 80) and addresses the parties' disputes regarding Plaintiffs' Interrogatories and Requests for Production.

To conserve judicial resources, the parties agreed to a two-phase discovery approach in this case, with class certification discovery and briefing to be completed before merits discovery. Far from being "evasive" or "uncooperative," as Plaintiffs contend, Defendants have participated in discovery in good faith—engaging in multiple lengthy meet-and-confers in an effort to clarify Plaintiffs' overbroad and ambiguous discovery requests, and to address Plaintiffs' issues with Defendants' responses. Defendants also provided responsive information and documents to Plaintiffs. But instead of using that discovery to move the case forward, Plaintiffs have spent months criticizing the form of Defendants' responses, insisting that Defendants must provide information in a format most convenient to Plaintiffs—regardless of the burden to Defendants, regardless of how Defendants' information is stored in the ordinary course of business, and regardless of what Federal Rules of Civil Procedure 33 and 34 require. In short, it appears that Plaintiffs simply do not want to go through the effort of actually reviewing Defendants' production, and they want Defendants to do the work for them. But what Defendants are required to do is to provide relevant class certification discovery actually in their possession, custody, or control, and in the way that such information is stored. Defendants have done just that.

**Defendants Provided Plaintiffs with Responsive and Relevant Class Certification Information.**

Plaintiffs summarize their overbroad and duplicative discovery requests as seeking information that would allow them "to determine where [Defendants] shipped the 80,224 bottles that were not returned" as part of the recall of Atorvastatin. (Dkt. 80 at 2.) As Plaintiffs know, this recall was "retail-only," meaning that it did not extend to individual consumers. (*See* Compl. ¶ 2.) And as Defendants repeatedly told Plaintiffs during meet-and-confers and in supplemental interrogatory responses, Defendants do not maintain information regarding distribution and sales of Defendants' products at the individual consumer level in the ordinary course of business, and Defendants thus will not provide distribution and sales information regarding the recalled Atorvastatin at the consumer level.

On August 12, 2016, Defendants produced various correspondence and detailed reports that the company had submitted to the FDA during the recall, which provided Plaintiffs with information responsive to their requests. (*See infra* at 4.) When Plaintiffs complained that they could not determine which documents were responsive to which Interrogatory, Defendants provided further clarification, identifying the Bates numbers of documents containing responsive information and tying them to Plaintiffs' Interrogatories. (Ex. 1, October 14, 2016 Letter from Tishyevich to Gainey, at 2-4.)

**Plaintiffs' Overbroad Interrogatories Are Impossible to Answer in Narrative Form, and Their Objections to Defendants' Reliance on Rule 33(d)(1) Are Unavailing.**

Rather than use what Defendants produced in discovery, however, Plaintiffs have continued to take issue with the form of Defendants' Interrogatory responses, demanding that Defendants answer each of them in "narrative" form. (Dkt. 80 at 2-3.) To illustrate the burden—if not outright impossibility—of providing narrative responses, Defendants point the Court to Interrogatory No. 5, the scope of which is illustrative of Plaintiffs' Interrogatories generally. It asks that Defendants:

> Provide separately for each of the 41 lots of recalled pills, all information and/or documents that the defendants have about each stage of the distribution of the pills, including all downstream distribution to individual stores, from the defendants all the way to the consumers, including every entity or individual (including but not limited to customers, wholesalers, chains, and retail stores) that the pills were shipped to and/or who handled the pills, the location where that occurred, the dates that the pills were shipped and received by each entity or individual, and all related information. Provide the contact information for each entity or individual and if an entity or individual who was involved in the distribution has an account number, shipping number or any other identifying information relating to their involvement or the distribution, provide that information.

To say that this Interrogatory is overbroad is an understatement. For one, it has multiple subparts and thus should not be counted as a single Interrogatory, as it asks Defendants to provide multiple categories of information ("all information," "documents," "location," "dates, "contact information," and "any other identifying information") for multiple entities ("from the defendants all the way to the consumers"—*i.e.*, every conceivable entity in the distribution chain, including "customers, wholesalers, chains, and retail stores" ).[1] As Defendants told Plaintiffs, there is no way to answer this overbroad Interrogatory in a "narrative form" short of providing an individual description of where each bottle was shipped. The 41 lots of the Atorvastatin were split up and sent to numerous sellers, who then shipped bottles to numerous retail outlets. Since there are ***hundreds of thousands*** of bottles of Atorvastatin at issue, Plaintiffs' demand for a narrative response for the entire distribution process at the level of detail they demand would likely result in a written Interrogatory response that is hundreds of pages long.

---

[1] *See, e.g.*, *Super. Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 218 (C.D. Cal. 2009) (an interrogatory that seeks "facts; persons; and documents" has "at least three discrete subparts"); *Super. Indus., LLC v. Masaba, Inc.*, 2010 WL 11469569, at *2 (D. Minn. Dec. 27, 2010) (agreeing that "interrogatories which collectively request substantive information, identification of witnesses, and identification of or production of documents should ***each*** be considered a separate request") (emphasis added).

Even though Plaintiffs' Interrogatory was improper and objectionable, Defendants still produced responsive information by relying on Rule 33(d) (which allows responding to an interrogatory by producing business records) and directing Plaintiffs to an Excel spreadsheet that was created during the recall as part of the company's response to the FDA. This spreadsheet provided almost all of the information that Plaintiffs sought—including the names and addresses of the entities that received the pills, how many bottles they received, lot numbers, and NDC numbers. (RANBAXY_FEN0000132.) Directing a party to a document like this is ***precisely*** the reason that Rule 33(d) exists, and identifying the relevant documents the way Defendants did here satisfies Rule 33(d). *See, e.g.*, *Eisai Inc. v, Sanofi-Aventis U.S., LLC*, 2011 WL 5416330, at *17 (D.N.J. Nov. 7, 2011) (Arpert, M.J.) (finding that "referencing specific responsive documents by Bates number" was sufficient to satisfy Rule 33(d)(1)). Further, Defendants also produced materials regarding the identification of downstream customers in the exact same format as was provided to the FDA. (*See, e.g.*, RANBAXY_FEN0000767, 164-548.)

Plaintiffs have objected to Defendants' use of Rule 33(d), however. Their chief complaint seems that "there is no certainty" to information in Defendants' documents.[2] (Dkt. 80 at 3.) But Plaintiffs provide no authority to support this novel view of discovery. Rules 33 and 34 have no "certainty" requirement; to the extent Plaintiffs believe these documents are somehow inconsistent or unclear, or that Defendants need to further "explain the distribution process" (*id.*), Plaintiffs are free to explore such issues in depositions. Plaintiffs also argue they supposedly cannot use these documents "at depositions, in motions, and at trial" (*id.*), but they do not explain why—and it is hard to see why, for example, an Excel spreadsheet with information regarding the recalled Atorvastatin could not be so used.

Finally, Plaintiffs complain that some of the information in Defendants' documents varies from information Defendants previously provided in settlement discussions (*e.g.*, whether the recalled pills were shipped to 35 customers or 36). (*Id.*) Again, Defendants strongly object to Plaintiffs' reliance on settlement discussions to create a discovery dispute (let alone to the fact that Plaintiffs disclosed them in a court filing), since such communications are inadmissible. Fed. R. Evid. 408. Moreover, Defendants have provided Plaintiffs with a list of consignees of the Atorvastatin at issue in the same format as what was provided to the FDA. (RANBAXY_FEN0000132.) To the extent Plaintiffs believe the documents they received are in any way confusing, they are free to explore those issues in depositions.

**Plaintiffs' Individual Interrogatories and Defendants' Responses.**

**Interrogatories 5, 6, 8, 9, 10 and 19:** At a high level, these Interrogatories seek information about the customers who received the 41 lots of the recalled Atorvastatin, the distribution chain thereafter, recall notices sent to customers, communications and notices sent to agencies like the FDA, and which recalled

[2] Plaintiffs also complain that Defendants' documents are "confus[ing]" and not in "chronological order[.]" (Dkt. 80 at 3.) There is no requirement to produce documents in chronological order; but regardless, Defendants ***did*** produce them that way: RANBAXY_FEN00000095 (the first produced email) was sent on November 28, 2012, while RANBAXY_FEN0000881 (the last produced email) was sent on March 14, 2014. Defendants produced documents as they were kept in the ordinary course of business; each email delineates by file name the attached documents; and the file names are provided in the metadata that was produced to Plaintiffs. Defendants simply do not understand Plaintiffs' basis for contending that this straightforward production was in any way confusing.

product was returned. Plaintiffs contend that Defendants' responses are insufficient because the information is "unclear" and "contrary" to settlement communications, the Bates ranges referenced identify too many pages, and Defendants did not provide consumer information, only retail-level information. First, as explained above, Plaintiffs cannot rely on inadmissible confidential settlement communications to gin up a discovery dispute. Second, Defendants' documents contain information about their customers, distribution chain, and returns—the very information Plaintiffs seek:

- RANBAXY_FEN0000085-891 are Defendants' emails and accompanying materials sent to and from the FDA as part of the Atorvastatin recall process. (Responsive to Interrogatory No. 10.)
- RANBAXY_FEN000130-32 are reports compiled during the recall period and submitted to the FDA, which identify the customers to whom Defendants shipped the recalled Atorvastatin, their addresses, batch and lot numbers, and NDC numbers. (Responsive to Interrogatories Nos. 5 & 8.)
- RANBAXY_FEN0000133-57 is an email to the FDA and attachments, which include representative recall letters to customers, as well as spreadsheets and charts documenting the Atorvastatin returned as part of the recall. (Responsive to Interrogatories Nos. 6, 8 & 9.)
- RANBAXY_FEN0000158-548 is an email and attachments to the FDA, which include customer listing and notifications to Atorvastatin distributors. (Responsive to Interrogatories Nos. 6 & 9.)
- RANBAXY_FEN0000549-658 is an email and attachment to the FDA, which include response forms from Defendants' customers in response to the recall. (Responsive to Interrogatory No. 6.)
- RANBAXY_FEN0000667-792 are emails and attachments to the FDA with subsequent monthly return reports, documenting the Atorvastatin returned from customers as part of the recall process to Defendants and their third party administrators. (Responsive to Interrogatory No. 6.)

Third, as Defendants told Plaintiffs in interrogatory responses, Ranbaxy does not maintain consumer-level information for its products. Because this recall was at a "retail only" level, and because Defendants (a drug manufacturer) do not sell their products to individual consumers in any event, Defendants do not believe they have relevant consumer-level information.

**Interrogatories 12 & 13:** These Interrogatories seek information about Defendants' computer systems—including, for example, the customers to whom the 41 lots were sent; what data is available from those systems; and what formats that data can be provided in. As Plaintiffs explain in their letter, their reason for seeking this information is only to provide information about the 41 lots and their customers. But as detailed above, Defendants have already provided such information as part of the FDA recall reports. (*See supra* at 4; RANBAXY_FEN0000130-32.)

**Interrogatory 21:** This Interrogatory seeks effectively all documents, information, and communications between Defendants and Inmar, a third-party entity that assisted with the recall process. This Interrogatory is overbroad because, read literally, it would require production of every piece of information that touches on Defendants' interactions with Inmar—the vast majority of which would be irrelevant. Recognizing that this Interrogatory was overbroad, Plaintiffs offered to narrow it "to ask[] what information the defendants have about Inmar's interaction with consumers or with Ranbaxy's 'customers' and specific details about the bottles and pills that those consumers or 'customers' were involved with." (Dkt. 80 at 5.) But even with this supposed narrowing, it is still unclear what Plaintiffs

seek when they ask for Defendants' "information" about "Inmar's interaction" with consumers or retail customers. As to Plaintiffs' questions about "specific details" about the "bottles and pills" of the recalled Atorvastatin, again, Defendants have already produced documents concerning the recall process, including monthly reports provided to the FDA that reflected product returned to Inmar as part of the recall (*see, e.g.*, RANBAXY_FEN00000725, 48, 68), as well as correspondence between Ranbaxy and Inmar about the recall process (*see, e.g.*, RANBAXY_FEN00000816, 31).

**Interrogatories 15 & 16:** These Interrogatories seek pricing information for the recalled Atorvastatin. Defendants will provide Plaintiffs with supplemental Interrogatory responses regarding the wholesale pricing of Atorvastatin; however, Defendants will not be able to provide information regarding retail-level pricing because they do not sell Atorvastatin at the retail level.

**Interrogatories 20:** This Interrogatory seeks information and documents regarding "private, public or government database[s]" that may exist to identify retailers, consumers, and other entities in the distribution chain involving the recalled Atorvastatin. Defendants have already provided information about the distribution chain, and the information sought is duplicative of Interrogatory No. 5. To the extent this Interrogatory seeks consumer-level information, Defendants do not maintain such information. Finally, to the extent Plaintiffs seek information about "public" or "government" databases, such information is equally accessible to Plaintiffs as it is to Defendants.

**Interrogatories 1 & 2:** Plaintiffs argue that Defendants' responses to Interrogatories 1 and 2 are incomplete because the verification signed by VP of Quality Assurance, Daniel Martins, referenced other "employees" with whom he consulted, and those employees were not named. As Defendants told Plaintiffs a number of times (including in writing), the other "employees" referenced were Defendants' in-house counsel, Mr. Hunter Murdock.

**Defendants' Document Production:** Plaintiffs contend that Defendants' production was insufficient because Defendants supposedly "must identify by bates-stamped numbers which documents respond to which Interrogatories and which Requests." (Dkt. 80 at 6.) Plaintiffs cite no authority to support such a view; and to the contrary, under Rule 34, the responding party "must produce documents as they are kept in the usual course of business ***or*** [it] must organize and label them to correspond to the categories in the request." Rule 34(b)(2)(E)(i) (emphasis added). Defendants elected the first option, which is plainly permissible. *E.g.*, *Thompson v. Altoona Housing Authority*, 2011 WL 7037128, at *2 (W.D. Pa. Nov. 3, 2011).

**Stipulation Concerning ESI and Discovery:** Finally, the parties exchanged proposed stipulations concerning the production of ESI (which largely deal with technical issues such as the format of productions). Defendants will arrange for a conference call with the parties' respective ESI vendors in an effort to resolve these issues without the Court's involvement.

Respectfully,

*/s/ Michael E. Patunas*

Michael E. Patunas

cc: All Counsel of Record (Via ECF)