# EXHIBIT 1

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, New York 10022

Dmitriy Tishyevich
To Call Writer Directly:
(212) 446-6453
dmitriy.tishyevich@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

October 14, 2016

**Via E-mail**

Barry Gainey, Esq.
Gainey McKenna & Egleston
95 Route 17 South, Suite 310
Paramus, NJ 07652
bgainey@gme-law.com

> Re:   *Fenwick v. Ranbaxy Pharms., Inc., et al.*, Case No. 3:12-cv-07354-PGS-DEA (D.N.J.)

Dear Barry:

I write to follow up on my July 26th and September 2nd letters to you and to seek further clarity regarding Plaintiffs' positions on certain outstanding discovery issues following our meet and confer and your recent letters. As before, the below list is not intended to be exclusive and Defendants reserve the right to raise additional issues as may be appropriate. We look forward to discussing these issues in a meet and confer, so that the parties can resolve the outstanding discovery issues without the need for judicial intervention.

## I.      Plaintiffs' Interrogatory Responses.[1]

**Objection to the time period.** The Interrogatories sought information dated after January 1, 2011. Plaintiffs contended in their Objections that this time period was unreasonable because "the contaminated pills were in prescriptions filled after September 28, 2012" and "[t]he recall was in late November 2012." (General Objection 4.) As explained in my July 26th letter, as a compromise, Defendants proposed that neither party would seek discovery dated before January 1, 2012. In both your August 23, 2016 and September 23rd letters you proposed a time restriction for ***Plaintiffs*** as of January 1, 2012, but not for Defendants. As we discussed on our August 3rd meet and confer, Defendants believe that any time restriction should be reciprocal. On that call, you advised that you would consider Defendants' proposal further and determine

---

[1]   Although Plaintiffs served separate interrogatory responses for Plaintiffs Francis Fenwick, Edward Safran, Mary Wardrett, Linda Young, and Steven Harding (together, "Plaintiffs"), many parts of the responses (particularly the objections) are identical. Thus, unless otherwise noted, the deficiencies listed here apply to interrogatory responses from all Plaintiffs.

Beijing    Chicago    Hong Kong    Houston    London    Los Angeles    Munich    Palo Alto    San Francisco    Shanghai    Washington, D.C.

# KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 2

whether the January 1, 2012 time period would be agreeable for both parties.  Please let me know your position.

**Interrogatory No. 1.**  Plaintiffs' Objections stated that "plaintiff's prescriptions for Atorvastatin which were filled before or after the time period that is relevant to the recall of the contaminated and adulterated pills are not relevant," and that "plaintiff's purchase of atorvastatin pills manufactured by other drug companies is not relevant."  In my July 26th letter and on the August 3rd meet and confer, Defendants explained that Plaintiffs cannot unilaterally determine what they deem to be the "relevant" time period for this lawsuit.  Defendants also explained that Defendants are entitled to know the named Plaintiffs' purchasing history of Atorvastatin before the recall, and whether they had in fact bought Atorvastatin before, during, and after the recall.  You advised that you would consider providing Plaintiffs' purchasing history along with the relevant time period issue stated above, but would not provide information about purchases from other manufacturers.

In your September 23rd letter and supplemental interrogatory responses, Plaintiffs provided some additional information regarding purchasing history and out-of-pocket costs that seems to have assumed a relevant time period of January 1, 2012 going forward.  Since the parties have not agreed upon a relevant time period, we cannot be sure whether Plaintiffs' responses are satisfactory.  Your letter also suggested that additional information may be provided as Plaintiffs' investigations continued, but that Plaintiffs were objecting to providing a lot number for each purchase made by Plaintiffs (aside from information provided by Mr. Safran).  Ultimately, if Plaintiffs are unable to provide this information because they do not have it, their responses should so state.

**Interrogatory No. 6.**  While your September 23 letter and supplemental interrogatory responses provide information with respect to Plaintiff Safran, neither your August 23rd letter nor September 23rd letters address Plaintiff Young's response to Interrogatory No. 6, which states that "CVS would not give the plaintiff a refund for replacement."  As explained in my July 26th letter and on the August 3rd meet and confer, this response does not state whether Young had actually requested a refund from CVS (or any other person or entity).  I again ask that you provide an answer as to whether Plaintiff Young asked for a refund—and if so, "describe the substance of each such communication," as this Interrogatory asks.

**Interrogatory No. 9.**  This Interrogatory asks Plaintiffs to "[i]dentify each communication that you had with any person or entity relating to your use of the allegedly adulterated Atorvastatin, and for each communication:  (1) state the date and substance of the communication; and (2) identify all documents related to that communication."  Plaintiff Wardrett's, Harding's, and Young's responses state that they had "communicated with medical people about the contaminated and adulterated pills."  In my July 26th letter, Defendants asked

# KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 3

for more information about the date and substance of those communications; but Plaintiffs advised that they will provide no further information in response to this Interrogatory.

In Defendants' view, communications Plaintiffs may have had that suggested they continue Atorvastatin are relevant to both Plaintiffs' damages theory as well as predominance and/or commonality under Rule 23. Given Plaintiffs' refusal to produce this information, the parties appear to be at an impasse on this issue, and Defendants will proceed accordingly.

**Interrogatory No. 11.** Plaintiffs Safran's and Hardin's responses provided information responsive to this Interrogatory, stating whether they continued taking Atorvastatin. In your August 23rd letter, however, Plaintiffs take the position that they will provide no further responsive information. As with respect to Interrogatory No. 9, Defendants view this information as relevant to Plaintiffs' damages theory as well as predominance and/or commonality. Here, too, Defendants will assume that the parties are at an impasse and will proceed accordingly.

**Interrogatory Nos. 13-14.** Plaintiffs continue to object to these Interrogatories, which ask Plaintiff to identify "each warranty, express or implied, that you allege Defendants made to you"; to provide certain specific details about each such alleged warranty; and to "[i]dentify and describe each and every document which in any way mentions, describes, or otherwise refers to what you allege is a representation by Defendants, and which you claim was a warranty subsequently breached by Defendants." As explained both during our meet and confer and in my July 23rd letter, this information is plainly relevant given the warranty claims that Plaintiffs have asserted. If Plaintiffs no longer wish to pursue their warranty claims, please advise; otherwise, Defendants are entitled to this discovery. If Plaintiffs continue to refuse to provide this information, we will assume that the parties are at an impasse.

**Interrogatory No. 15.** Plaintiffs similarly object to providing any information in response to this Interrogatory, which asks Plaintiffs to "[s]tate all facts and legal theories and identify all documents supporting your contention that the Atorvastatin you received was not merchantable[.]" Once again, given Plaintiffs' claims for breach of warranty of merchantability, this information is plainly relevant and we not understand Plaintiffs' objection to producing it. Again, if Plaintiffs no longer wish to pursue their warranty claims, let me know; otherwise, we expect Plaintiffs to produce this information. Again, if Plaintiffs continue to refuse to provide this information, we will assume that the parties are at an impasse on this issue.

**Interrogatory No. 17.** Although certain of the named Plaintiffs provided the name of their insurer, your August 23rd letter states that Plaintiffs object to providing any further information in response to this Interrogatory. Defendants disagree with Plaintiffs' view that this Interrogatory "does not relate to class certification issues," since the amounts Plaintiffs paid out-of-pocket for Atorvastatin versus the amounts paid by their respective insurers (and the extent to

# KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 4

which these amounts and ratios differed between different Plaintiffs) are relevant to commonality and typicality under Rule 23(b), as well as to whether Plaintiffs will be able to prove damages by classwide proof.   And contrary to your August 23rd letter, providing out-of-pocket costs for the named Plaintiffs will not be enough to show the variation among plans and costs paid by Plaintiffs.  For example, as you said during the meet and confer, the premiums paid by Plaintiffs (which is not an out-of-pocket expense), is relevant to a damages analysis and will vary among health insurance plans.  This information can only be determined by Plaintiffs providing this information to Defendants, or by Plaintiffs providing their applicable insurance plans.  Once again, let me know if Plaintiffs will provide responsive information; if not, we will assume that the parties are at an impasse.

**Interrogatory No. 18.**  As explained in my July 26th letter, to the extent Plaintiffs intend to seek damages that are derived from payments made by insurers, Defendants are entitled to know whether Plaintiffs' health insurance plans would even permit such a recovery, and whether Plaintiffs can propose a workable class damages model for class certification given these limitations.  Nothing in your August 23rd letter suggests otherwise.  This issue will not be "addressed at a later time," as you suggest; rather, it will be addressed as part of the class certification predominance analysis.  *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  Please advise whether Plaintiffs will provide this information; if not, we will assume the parties are at an impasse.

**Interrogatory No. 20.**   Plaintiffs' response to this Interrogatory suggests taking a wait-and-see approach to their damages calculations.  As explained in my July 26th letter and in our meet and confer, however, Plaintiffs cannot unilaterally limit discovery to a damages theory that Plaintiffs prefer.  Indeed, your August 23rd response to this Interrogatory actually highlights the need for discovery on this issue, since Plaintiffs admit that "the full price paid for all of plaintiffs' prescriptions is unknown at this time."  For similar reasons, Plaintiffs' responses to Interrogatories 17 and 18 are insufficient.  Once again, Plaintiffs cannot arbitrarily decide that damages are the "market price" of the product—to be determined from Defendants' discovery, no less—and then deny discovery from Plaintiffs that would rebut the adequacy of that damages model.   Please advise whether Plaintiffs will provide this information; if not, we will assume the parties are at an impasse.

## II.    Plaintiffs' Responses to Requests for Production of Documents.

**"Documents relating to the plaintiffs' Answers to Interrogatories."**  The response in your August 23rd letter misconstrues the concerns raised in my July 26th letter.  To be clear, the concern was that by incorporating the responses to their Interrogatories (to which Plaintiffs objected on numerous grounds), it is unclear whether Plaintiffs have agreed to actually produce documents in response to Defendants' RFPs or if they intend to withhold documents based on their objections to the Interrogatories.   The bottom line is that Plaintiffs' objections and

# KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 5

subsequent correspondence have provided little to no insight into what documents Plaintiffs actually intend to produce, and what information and documents they do not intend to produce. This is inappropriate under Rule 34.

**RFP No. 13.**   While your August 23rd letter suggests that Defendants re-write this Request, there is nothing to re-write.   Producing "[a]ll documents reflecting communications with any person or entity (including without limitation any Health Care Provider, Insurance Provider, or Pharmacy) regarding Atorvastatin" is not confusing.   Plaintiffs' answer—that they will produce documents "that are discoverable and relevant to the issues in this case"—is conclusory, circular, and confusing.   And your August 23rd letter does nothing to clarify what Plaintiffs intend to produce.   I once again ask that Plaintiffs respond with a description of what (if any) documents Plaintiffs have actually agreed to produce in response to this Request, or how Plaintiffs purport to define what "relevant" means in this context.

**RFP No. 14.**   Despite earlier indicating that Plaintiffs would produce "discoverable and relevant" documents in response to this Request, your August 23rd letter now states that you plan to withhold documents in response to this Request on relevance grounds.   The documents sought by this Request are relevant, for reasons we have discussed before.

**RFP No. 18.**   As I wrote in my July 26th letter, the Complaint references a number of documents, publications, websites, reports, etc., and Defendants are entitled to know what documents and sources purportedly support the allegations in the Complaint.   In your August 23rd letter, you responded that Plaintiffs would "determine what documents we have and supplement our response."   Your September 30th production provided a Wall Street Journal article apparently referenced in the Complaint (PLTF00014-15), but did not provide the other documents we requested.   Please advise if and when these additional documents will be produced.

**RFP No. 19.**   As I wrote in my July 26th letter, labels, package inserts, and the like may contain manufacturer representations.   Information concerning the contents of those representations, whether Plaintiffs had them, and/or whether they relied on them is plainly relevant for class certification purposes.   Your August 23rd letter references your Interrogatory responses to Nos. 13-15, which objected to providing any information about the warranties at issue in this litigation, but your September 30th production provided pictures of Atorvastatin bottles with pictures of the labels (PLTF0001-12, 16-19).   Given that Plaintiffs' September 30th production apparently conflicts with your August 23rd letter, it is unclear if Plaintiffs intend to further withhold documents responsive to this Request.   Please advise.

**RFP No. 20.**   As stated above in response to Interrogatory 19, Plaintiffs agreed to supplement their response, and as a "further compromise" to determine if Plaintiffs had any responsive documents.   Plaintiffs updated their Interrogatory response but did not produce any

# KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 6

additional documents.  Please provide an update on whether any documents were located, and if so, when Plaintiffs will produce them.

**RFP No. 22.**  Your August 23rd letter continues to misconstrue this Request.  As stated in my July 26th letter, Defendants  expect that if Plaintiffs do issue a subpoena to any third party in the future (or obtain documents from third parties by any other means), Plaintiffs will provide Defendants with copies of those documents, and vice versa.  The fact that Plaintiffs have not yet served a third party subpoena is irrelevant.   Please confirm that Plaintiffs will provide Defendants with any documents received pursuant to a third-party subpoena in the future, if any.

As requested in your August 23rd letter, Defendants confirm that to date they have not issued any third-party subpoenas.

## III.   **Defendants' Interrogatory Objections and Responses**

### **Supplemental Interrogatory Responses:**

As noted in your September 30, 2016 letter, there was a typographical letter in the headings for supplemental Interrogatory responses we served on August 12th, but the text of each response refer to the correct Interrogatory.  For the avoidance of doubt, though, the first supplemental Interrogatory response relates to Interrogatory 5, the second relates to Interrogatory 19, and the third relates to Interrogatory 20.   Please let me know if you have any further questions with respect to this issue.

### **Interrogatories Nos. 1 & 2:**

As we discussed during the meet and confer, Plaintiffs took the position that Defendants' responses and objections to Interrogatories 1 and 2 are incomplete because the verification signed by Vice President of Quality Assurance, Daniel Martins, referenced other "employees" he consulted with in signing the verification.  As Defendants explained on the call, the other "employees" referenced were Defendants' in-house counsel, Hunter Murdock.  Your September 30th letter raises this issue again.  With the clarification we made on the call and by our letters, we believe it is unnecessary to supplement the Interrogatory response and/or to provide a new verification.

### **Interrogatory Nos. 5-6:**

Interrogatory Nos. 5-6 seek a list of customers to whom the 41 lots of Atorvastatin at issue were distributed, as well as certain other information about those 41 lots.  During the meet and confer, Plaintiffs took the position that Defendants' proposed response of producing responsive documents after a proportional and reasonably diligent search, pursuant to Rule 33(d), was insufficient, because Plaintiffs believed that no such documents were generated in the

# KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 7

ordinary course of business and only a narrative response would suffice.  Defendants disagreed with Plaintiffs' position, for reasons we discussed on the meet and confer, and proposed revisiting this issue, if necessary, after Defendants have produced their first set of documents. Defendants made that production on August 12, 2016.

In your September 30th letter, you advised us that you were unable to find the responsive information sought by Interrogatories 5 & 6.  Given the breadth and duplicative nature of Plaintiffs' Interrogatories, Defendants felt identifying documents by Bates number was unhelpful because documents could be responsive to several Interrogatories or RFPs and an Interrogatory that seeks "all" information and documents," such as Interrogatories 5 & 6 could have multiple documents that are responsive to it.  Further, looking for this information is certainly not "looking for a needle in a haystack," as you put it in your letter.  Regardless, in an effort to move discovery along, information responsive to Interrogatory No. 5 is available in documents Bates-stamped RANBAXY_FEN0000130-32, and information responsive to Interrogatory No. 6 is available in documents Bates-stamped RANBAXY_FEN0000133-792.

Your letter also suggests that Defendants' supplemental Interrogatory response (which stated that, to the extent Interrogatory No. 5 seeks consumer-level information, Defendants do not maintain such information in the ordinary course of business) is insufficient.  Without citing or referencing any relevant document, your letter suggests that Defendants' production indicates that Defendants did receive consumer level information.  Please explain your position on this and let me know what document(s) you are referencing, if any; without that information, we cannot adequately respond to this issue.

**Interrogatory No. 7:**

During the meet and confer, Plaintiffs took the position that they are entitled to information about whether the 41 lots of the Atorvastatin were destroyed because they seek an injunctive class to prevent resale of these 41 lots.  As we explained during the call, this Interrogatory goes beyond class certification issues and to the merits.  Moreover, the Complaint in any event makes no claim for injunctive relief that would prevent the resale of the 41 lots of Atorvastatin.  (*See* Third Am. Compl., Prayer ("[A]n Order providing for equitable and injunctive relief, including notice to consumers, refund to customers, replacement product for customers and/or payment of the value of the prescription pills purchased if they were not tainted and adulterated.")

In response, your September 30th letter suggests without any authority that Plaintiffs do not have to plead the type of injunctive relief they seek in the Complaint.  Defendants disagree. Even with the explanation in your September 30th letter, Plaintiffs still have not articulated any reason why this information is relevant to class certification issues.  Defendants stand on their objections.

## KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 8

### Interrogatory No. 8:

As we discussed during the meet and confer, Plaintiffs' position with respect to Interrogatory No. 8 is largely the same as with Interrogatory 5—*i.e.*, that Defendants' proposal to produce documents to show the customer distribution information for the 41 lots was insufficient. As with Interrogatory No. 5, Defendants asked Plaintiffs to review Defendants' forthcoming production before addressing this further. Defendants made that production on August 12, 2016.

In your September 30th letter, you advised us that you were unable to find the responsive information sought by Interrogatory 8. As with Interrogatories 5 & 6, in an effort to move discovery along, information responsive to this Interrogatory is available in documents Bates-stamped RANBAXY_FEN0000130-548.

### Interrogatory Nos. 9-10:

Plaintiffs' position is that they are entitled to information about Defendants' notification efforts as part of the recall of the 41 lots of Atorvastatin as well as information about any person or entity that Defendants notified about the recall. As we discussed during the meet and confer, these Interrogatories go well beyond class certification discovery and into the merits of this case, particularly insofar as they seek all information and documents about the mechanics of the recall and related correspondence. Moreover, to the extent Plaintiffs seek information about identities of Defendants' customers who received the 41 lots of Atorvastatin—which is the only information sought by these Interrogatories that may have any relevance to class certification— Defendants believe that their August 12, 2016 production addressed that request.

In your September 30th letter, you wrote that you were unable to find the responsive information sought by Interrogatories 9 & 10. As with Interrogatories 5, 6, & 8, in an effort to move discovery along, Defendants provide the following additional information: information responsive to Interrogatory No. 9 is available in documents Bates-stamped RANBAXY_FEN0000130-548; and information responsive to Interrogatory No. 10 is available in documents Bates-stamped RANBAXY_FEN000095-891.

### Interrogatories Nos. 12 and 13:

These Interrogatories seek certain information from and about Defendants' computer systems—including, for example, the customers to whom the 41 lots were sent; what data is available from those systems; what formats that data can be provided in; the employees responsible for managing that data; etc. During the August 3rd meet and confer, Plaintiffs agreed that these Interrogatories could be tabled until after Defendants' forthcoming production. In your September 30th letter, Plaintiffs change their position and request information responsive

## KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 9

to Interrogatories 12 & 13 "now."  Given Plaintiffs' changed position, Defendants request a meet and confer to discuss this issue further.

### Interrogatories Nos. 15 and 16:

Interrogatories Nos. 15 and 16 seek information about Defendants' pricing of Atorvastatin products to its direct customers as well as at the retail consumer level.  As we explained on our call and our September 2nd letter, Defendants' view is that as written these interrogatories are quite broad and go well beyond class certification issues.  We will provide a further response as to whether what, if any, pricing-related information Defendants may provide.

### Interrogatory No. 19:

This Interrogatory again seeks certain information regarding the consumers who bought product from the 41 lots at issue, including the identities of those consumers.  Plaintiffs took the position that Defendants' response was insufficient because Defendants did not provide a narrative response, instead agreeing to provide documents after a proportional and reasonably diligent search for responsive documents.  As Defendants stated in their August 12, 2016 supplemental responses and objections, Defendants do not maintain information regarding distribution and sales of Defendants' products at the individual consumer level.  Your letter suggests that Defendants' production indicates that they had received consumer level information.  You do not, however, cite what documents you are referring to.  Please let me know so that we can adequately respond to this issue.

### Interrogatory No. 20:

This Interrogatory seeks information and documents regarding public or private databases that may exist to determine which retailers, consumers, and other entities were in the distribution chain involving the 41 lots of Atorvastatin at issue.  As we set out in the objections and responses, Defendants refer Plaintiffs to our responses to Interrogatory No. 5, to the extent Interrogatory No. 20 is duplicative of Interrogatory No. 5.  And as explained in my September 2nd letter, Defendants' August 12, 2016 production and supplemental interrogatory responses provided additional information regarding the distribution of the 41 lots, and further made clear that, to the extent Interrogatory No. 20 seeks consumer-level information, Defendants do not maintain such information in the ordinary course of business and will not be providing it.

Your September 30th letter takes the position that Defendants' responses to this Interrogatory are insufficient.  Defendants refer Plaintiffs to their above responses to Interrogatory No. 5, and stand on their objections for any information not covered by their response and objections to that Interrogatory.

## KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 10

**Interrogatory No. 21:**

Plaintiffs take the position that Defendants' responses and objections to Interrogatory No. 21 were insufficient because Defendants had objected to the request for "all information and documents exchanged between the defendants and Inmar" (among other objections).  As we discussed during the meet and confer, this Interrogatory is overbroad; moreover, it seeks information that goes to the merits rather than class certification.  On the call, Plaintiffs indicated that this Interrogatory sought information about consumers who contacted Inmar about the recall; as we explained, however, the Interrogatory as written is not limited in any such way, and it would not be appropriate for Defendants to have to guess at how narrowly this broad Interrogatory should be interpreted. Further, as we discussed, this Interrogatory appears to seek information and documents that would be in the possession of Inmar and not Defendants.

In your September 30th letter, you narrow your request to any documents in Defendant's possession that deals with Inmar's interactions with consumers.  Given Plaintiffs' changed position, Defendants request a meet and confer to discuss this issue further to clarify what documents this Interrogatory is targeting, so that we can determine whether Defendants will provide Plaintiff any responsive information (if it exists) or stand on their objections.

**Interrogatory No. 22:**

This Interrogatory seeks information concerning Defendants' document retention policies as well information regarding specific policies or litigation holds that may have been instituted after the recall.  Defendants objected to this Interrogatory on multiple grounds, including privilege and relevance.  We further explained on the meet and confer why Defendants do not believe this Interrogatory seeks relevant information, particularly at the class certification stage. On the meet and confer, the parties agreed to table this issue for the time being.

Your September 30th letter seeks to resurrect this issue by arguing that "defendants' document retention polices" can be discoverable in certain situations.  Your letter does not suggest that your request falls into one of those situations.  Defendants stand on their objections.

**Interrogatory No. 24:**

This interrogatory seeks information regarding "mailing, reports, updates, summaries or other documents" that Defendants received from or provided to government departments, government agencies, companies, entities, or individuals related to the 41 lots of Atorvastatin. As we stated in the objections and further explained on the call, this Interrogatory is quite overbroad and goes well beyond the scope of class certification discovery.  On the meet and confer, Plaintiffs indicated that this Interrogatory seeks information about customers and

## KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 11

consumers related to the recall.  As noted in my September 2nd letter, however, as written this Interrogatory goes well beyond that topic.

Your September 30th letter attempts to narrow this request to "mailings about the defendants' 'customers' and consumers."  So narrowed, this request is coextensive with and duplicative of Interrogatories 9, 10, and 19.  Defendants refer Plaintiffs to their responses to those Interrogatories.

### IV.    Defendants' Responses to Plaintiffs' Requests for Production

Without specifying any of Defendants' particular responses and objections to any one of Plaintiffs' Requests for Production, Plaintiffs took issue with Defendants lack of productions at the time of your July 15, 2016 email. Defendants then made a document production on August 12, 2016, which addressed many of the outstanding issues the parties discussed during the meet and confer.  Your September 30th letter raises three reasons as to why Defendants' productions were purportedly insufficient.

*First*, your letter suggests that Defendants must tie documents produced to answer specific Interrogatory under Rule 33(d).  Defendants do not agree; nonetheless, to move discovery along, Defendants have remedied this issue by the responses provided in this letter, which include the Bates numbers for documents used to answer Plaintiffs' Interrogatories.

*Second*, your letter suggests that Defendants must tie produced documents to specific requests for productions.  We are unaware of any such requirements in the Federal Rules of Civil Procedure or this Court's Local Rules, and having to organize productions in such a way would be unduly burdensome.  Defendants will not produce documents in this manner.

*Third*, Plaintiffs suggest page numbers 1-94 were produced without Bates-stamped numbers, but this is not true.  The documents provided to Plaintiffs that accompanied Defendants' Initial Disclosures were stamped RANBAXY_FEN000001-94.  We see no need to reproduce these documents.

*       *       *

We welcome the opportunity to further meet and confer about any of the above-listed issues, to the extent open issues remain.

# KIRKLAND & ELLIS LLP

Barry Gainey, Esq.
October 14, 2016
Page 12

Best regards,

*/s/ Dmitriy Tishyevich*

Dmitriy Tishyevich

cc:     Devora Allon
        Michael Patunas
        Richard Nicholson