<u>FENWICK, ET AL. V. RANBAXY PHARMACEUTICALS, INC., ET AL.</u>
3:12-cv-07354-PGS-DEA

**<u>PLAINTIFFS' RESPONSE TO DEFENDANTS'
SUBMISSION ON DISCOVERY DISPUTES</u>**

**<u>Response to Defendants' Introductory Comments</u>**

In their introductory comments, the defendants state that they are seeking "basic information to determine whether a class can be certified". In reality, their submission reads more like opposition to a class certification motion than a discovery dispute submission. The defendants are trying to distract the focus from the real issue in the case, which is that the defendants sold generic Lipitor pills which contained glass particles but they will not admit liability to the class members.

The defendants claim that the requested information bears on plaintiffs' ability to ascertain a class but they are wrong. Our "ability to ascertain a class" depends in a large part on information to be obtained in discovery and investigation and obtained from the third-party wholesalers and retailers of the recalled pills. They claim that the requested information bears on plaintiffs' ability to show common issues but they are wrong. The "common issue" among the class is that they all received prescription pills that were recalled because they contained glass particles. They claim that the requested information bears on plaintiffs' ability to establish a class-wide damages model but they are wrong. The "class-wide damages model" will also depend largely on the information obtained in discovery and investigation and from the third-parties.

The plaintiffs have provided the information and documents that they have relating to their purchases of the recalled pills, which is the only relevant discovery from the plaintiffs. Additional information and documents will come from other discovery and investigation.

I.   **<u>Plaintiffs' Interrogatory Responses and Related Document Requests</u>**

**<u>Purchasing History and Out-of-Pocket Costs:</u>** The first issue to consider is the problem caused by the defendants' definition of "Atorvastatin" in their interrogatories and discovery requests. Their definition is: "Atorvastatin" means any drug that consists of or contains atorvastatin." That is obviously flawed and unusable. The definition of a word cannot use the word itself. It makes the definition circular and unworkable. In addition, the definition is too broad for the case.[1]

In an attempt to salvage the flawed interrogatories and discovery requests, we focused on the 41 lots of recalled pills that are the subject of this case. That is what is relevant and thus discoverable. The plaintiffs have produced everything that they have relating to their purchasing history and out of pocket costs for their purchases of the recalled pills. We also informed the defendants that we expect additional information concerning those issues to come from discovery and investigation and from the third-party retailers.

We objected to interrogatories and discovery requests about: (1) purchases of Atorvastatin before or after the time period when the recalled pills were in the marketplace; and (2) purchases of

---

[1] By comparison, our interrogatories and discovery requests used the term "41 lots of recalled pills" as the focus point.

Atorvastatin made by other manufacturers. That information is not relevant to class certification issues. The defendants' arguments to the contrary are unpersuasive.

First, they argue that purchases before and after the recall period are relevant because the plaintiffs' Complaint does not propose a specific temporal class period, which could result in a broader class definition. The reason the Complaint was drafted in that manner is because at that time it was unknown whether the 41 recalled lots were the only contaminated pills. Defense counsel has since represented that there were no other contaminated pills, which clears up any question about the class period or the class definition.

Second, the defendants argue that even if the proposed class is limited to the recall period, they still have a right to conduct discovery on purchases outside the recall period and on purchases of Atorvastatin made by other manufacturers. To suggest relevance, they point out that plaintiff Mary Wardrett did not provide proof of her purchase or out of pocket costs. Then they make a giant assumption that we intend to offer an affidavit to prove the purchase. They cite to the *Marcus* and *Carrera* decisions, in which the Third Circuit noted that affidavits may not be sufficient. Of course, those cases about the ascertainability requirement in the Third Circuit were decided at the class certification stage. We are in the discovery phase of this case. Additional information concerning the purchases of the recalled pills will come from discovery and investigation and from the third-party retailers. That information will be used to satisfy the ascertainability requirement when we get to the class certification stage. For now, the point is that the ascertainability issue cannot be used to justify discovery of information that is not relevant.

Third, the defendants argue that purchases of Atorvastatin made by other manufacturers are relevant because it might "show that plaintiffs did not buy the recalled Atorvastatin". That is simply not correct. Moreover, evidence of that nature would not be admissible to support such an argument. The purchase of generic Lipitor pills made by other manufacturers is not indicative of anything. The plaintiffs' interrogatory answers and discovery responses are proper and sufficient.[2]

**Communications about Recalled Atorvastatin:** Three of the plaintiffs (Wardrett, Harding, and Young) state in their interrogatory answers state that they communicated with "medical people about the contaminated and adulterated pills". The defendants asked for specific details and we refused because the plaintiffs' medical conditions have not been put at issue in this case. The defendants argue that the information is relevant because it might show that "they continued taking Atorvastatin". (That argument ignores the interrogatory answers that state that the plaintiffs stopped taking it.) The defendants argue that if the plaintiffs continued taking Atorvastatin, it is relevant to the issue of damages and to "predominance, typicality, adequacy, and/or commonality under Rule 23". They are wrong on both counts.

On the damages issues, the defendants actually have the nerve to argue that the contaminated pills "still retained some value". They hope to reduce the amount of the damages, which is the full retail value of the pills if they were not contaminated with glass particles. They argue that the conversations with medical people could potentially show that the plaintiffs kept

---

[2] We feel obliged to respond to the defendants' comments about the agreement between counsel "to a reciprocal discovery start date of January 1, 2012". Counsel agreed to that start date but it was with a clear reservation of the right to object to specific interrogatories if the start date agreed to is not relevant. In fact, our e-mail to defense counsel stated our position on purchases outside of the recall period and purchases of pills made by other manufacturers. The string of e-mails concerning that agreement is attached as Exhibit 21.

taking the pills after the recall, which could support their position about the pills having value. Of course, the argument is preposterous. Judge Sheridan described it as a "tenuous argument" and noted that" the defendants miss the point". (See decision on the motion to dismiss; Exhibit 22.)[3]

The defendants' submission does not elaborate on their argument that if the plaintiffs continued to take Atorvastatin it somehow relates to the Rule 23 issues. The defendants simply list predominance, typicality, adequacy, and commonality. None of those factors are affected by whether the plaintiffs continued taking Atorvastatin. The Court should rule that the plaintiffs' interrogatory answers and discovery responses are proper and sufficient.[4]

**Communications about Recalled Atorvastatin:** The defendants' submission states that Interrogatory No. 1 asks the plaintiffs about whether they continued to take the contaminated pills after learning of the recall. It is actually Interrogatory No. 11. Their submission also says that plaintiffs Ed Safran and Steve Harding stated in their interrogatory answers that they continued to take the pills. The defendants' submission is wrong. None of the plaintiffs' answers to interrogatory number 11 state that they continued to take the contaminated pills after they learned of the recall. Thus, we assume that this is not really a disputed issue.

**Breach of Express and Implied Warranties:** The warranty issues in this case are not difficult to understand. The Ranbaxy pills had glass particles in them. The FDA found that the Ranbaxy pills were adulterated. The Ranbaxy pills were recalled because of the glass particles. There is no question that there was a breach of express and implied warranties. Judge Sheridan put it well in his decision on the defendants' motion to dismiss:

> "the defendants miss the point; that is, there are glass particles in the Ranbaxy pills, and plaintiffs object to ingesting same. Certainly the Complaint articulates a very basic claim that the plaintiffs purchased the Ranbaxy pills on the proposition that the generic was as safe as Lipitor, which is a condition that the Ranbaxy pills did not meet."
> (Exh. 22, page 5)

Judge Sheridan also noted that "the claim is based on the fact that the plaintiffs did not receive what they paid for. They paid for a generic cholesterol lowering drug like Lipitor, but instead they received pills that contained glass particles, which are below commercial standards". (Exh. 22, page 7) It is obvious that prescription pills which are recalled because they contain glass particles are below commercial standards, unfit for a buyer's ordinary purpose, not of the promised quality, safety and integrity, and not merchantable goods. That simply cannot be disputed.

Our answers to interrogatory numbers 13, 14, and 15 (which asks about "facts and legal theories" supporting the contention that the recalled pills were not merchantable) state that the

---

[3] Judge Sheridan made his comments as part of his discussion of the FDA's actions. After the recall, the FDA issued contradictory statements concerning the tainted pills. The FDA's initial statement advised consumers to stop taking the tainted pills and the statement also mentioned obtaining alternative products. Then the FDA reversed its position and stated that patients can continue taking the pills unless their doctor directs otherwise. (See Exhibit "23"). The FDA decided that the possible health problems from taking the contaminated pills was a better risk for patients than the possible health problems that would arise if a patient stopped taking his cholesterol lowering medication.

[4] It must be noted that the defendants' footnote 6 describes our discovery response to RPD # 13 as "circular and confusing" because it promised to produce documents that are "discoverable and relevant". The defendants fail to mention that we supplemented that response and the supplement includes a reference to specific bates-stamped documents, which are communications that plaintiff, Ed Safran, had with Express Scripts.

questions about warranty issues involve merits issues and not class certification issues. We also noted that that it is obvious that prescriptions pills that are contaminated with glass particles are not "merchantable". The warranties and representations by the defendants involve their sale of a generic version of Lipitor, which is warrantied and represented to be the same as the brand name drug (including having the same safeness, qualities, etc.) We discussed with the defendants the paragraphs in the Complaint that state that the contaminated pills were not merchantable goods because they would not pass without objection in the trade or industry, because they were not fit for the ordinary purpose for which such goods are used, and because they do not conform to the promise and/or affirmation of fact made. It could not be clearer.

As for Request for Production number 19, it asks for "all labels, package inserts, package outserts, handouts, or marketing materials for Atorvastatin". In addition to our response that it relates to merits issues and is not relevant to the issues involved in the case, we also reminded the defendants that their definition of "Atorvastatin" makes the request too broad and unanswerable.

The defendants' submission argues that the interrogatories and discovery requests about warranties should be answered because there are times when the analysis of class certification issues involves some overlap with merits issues.[5] While the case law does say that, this is not one of those situations. The defendants' argue that the question of whether the plaintiffs relied on warranties goes to commonality, typicality and adequacy of the representatives. When the facts of this case are considered, the defendants' argument does not hold up. This is not a case that involves the issue of reliance as the defendants suggest. Generic versions of prescription pills like Lipitor are held out to be of the same quality as the name brand pill.[6] Without that foundation, the entire generic drug industry would not exist. As such, the issue of reliance does not come into play in this case.

The defendants also argue that the Court cannot certify a nationwide class for the breach of warranty claims in this case. Of course, the class certification issues are not before the Court in these submissions concerning discovery disputes. A thorough response to the defendants' arguments against class certification could, by itself, exceed the 5 page limit. Suffice it to say, there is obviously no conflict among state laws when it comes to prescription pills that contain glass particles. Under the law of every state, prescription pills that are recalled because they contained glass particles would constitute a breach of the implied and express warranties. There is no state whose law would require the class members to prove "reliance" before they can recover for the recalled, contaminated pills. But, the class certification issue are for another day.

**Health Insurance Plan Information:**  In their argument for discovery of the plaintiffs' health insurance plans and prescription drug plans, the defendants again claim that it is relevant to commonality and typicality and is relevant to whether plaintiffs can prove damages by class-wide proof. However, the support they offer simply does not apply to the facts of this case.

The defendants cite to the *Vista Healthplan* case, which is not factually similar at all. The quotes offered by defendants are completely inapplicable. That case involved allegations that drug

---

[5] By making the "overlap" argument, the defendants are admitting that the interrogatories and request for production of documents about warranty issues involve merits issues.

[6] The Court can take judicial notice of the fact that generic pills must be of the same standard as the name brand pills that they are held out to be a replacement for. The Court can also take judicial notice that generic pills are warrantied to be safe, and of the same promised quality, safety and integrity as the name brand pills.

companies entered into anticompetitive reverse-payment settlement agreements that violate the antitrust laws. The question of whether the proposed class members in that case could be identified and whether they came within the class definition was examined by the court. In that setting, the court made its comments about the "complex nature of the pharmaceutical and insurance industries" affecting the ascertainability issue. The court also noted that "many individualized questions" must be answered to determine if an individual comes within the class definition. Of course, none of those issues are involved here. Our class is composed of consumers who received the contaminated pills. The ascertainability issues will be addressed through discovery and investigation and the information obtained from the third-party wholesalers and retailers of the recalled pills. The damage components include the amounts that the plaintiffs paid out of pocket and the retail value of uncontaminated pills that they were supposed to receive. The plaintiffs are entitled to expectation damages, which is the value of the pills they were supposed to receive. The suggestion by the defendants that the "amounts paid by their respective insurers (and the extent to which these amounts and ratios differed between different plaintiffs)" is relevant is simply nonsense. Again, Judge Sheridan said it well when he noted that "the claim is based on the fact that the plaintiffs did not receive what they paid for. They paid for a generic cholesterol lowering drug like Lipitor, but instead they received pills that contained glass particles, which are below commercial standards". The amounts paid by insurers or the amounts that the plaintiffs paid for their health insurance have nothing to do with the case and they do not affect the damages. The issue of whether the health insurance plans would permit recovery is also not involved in this case. The consumers received pills that had glass particles in them and thus were of no value. The consumers are entitled to damages.

## II. Plaintiffs' Responses to Defendants' Requests for Production of Documents

**Documents Relating to Plaintiffs' Answers to Interrogatories:** The defendants' submission make it sound as if we incorporated all of our objections to the interrogatories into all of our discovery responses. In reality, the only time our discovery responses referred to the objections in our interrogatory answers is when the discovery request referred to a specific interrogatory by number.[7] So, the defendants' argument that our responses are "unclear" is without merit.

The defendants also argue that our discovery responses do not comply with Rule 34 of the F.R.C.P. because they do not state whether any responsive materials are being withheld based on the objection. It is interesting that the defendants have raised this issue now since they objected to all 41 of our requests and none of their answers state whether any responsive materials are being withheld based on the objection. We believe that our objections and responses are clear and proper.

Respectfully yours,

Barry J. Gainey

December 2, 2016

---

[7] As an example, Request for Production Number 8, and our response to it, is quoted here. (Emphasis added)
REQUEST # 8. All documents reflecting communications with any person or entity relating to your use of the allegedly adulterated Atorvastatin, <u>including all documents identified in response to Defendants' Interrogatory No. 9.</u>
RESPONSE # 8: <u>The plaintiffs refer the defendants to the objections in the Answer to the specific Interrogatory referred to in this Document Request.</u> Notwithstanding the objections, and without waiving their rights, the plaintiffs provide the following response: Copies of documents relating to the plaintiff Ed Safran's Supplemental Answers to Interrogatory No. 9 are being provided. They are bates-stamped PLTF00020 to PLTF00023.