# PATUNAS LAW LLC

Michael E. Patunas<br>
mpatunas@patunaslaw.com

May 4, 2017

**VIA ECF**

Hon. Douglas E. Arpert, U.S.M.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *Fenwick, et al. v. Ranbaxy Laboratories, LTD., et al.*, No. 3:12-cv-7354 (PGS)

Dear Judge Arpert:

      This firm, together with Kirkland & Ellis LLP, represents Defendants in the above-captioned matter. This letter responds to Plaintiffs' letter to the Court, which they filed yesterday evening. (Dkt. 102, the "Letter.")

      Plaintiffs' Letter does not accurately recount the timeline of the case or the discovery process to date. Defendants will not belabor each inaccuracy in the Letter, and will instead focus only on Plaintiffs' chief complaint—that Defendants supposedly improperly withheld documents, and that Plaintiffs need more time to prepare for depositions as a result.

      The notion that Defendants improperly withheld and delayed documents is incorrect. Defendants previously produced documents in response to Plaintiffs' discovery requests, and the parties had several disagreements as to what, if any, additional documents should be produced. The parties briefed these issues; during the January 9, 2017 Status Conference, the Court then ordered both Plaintiffs and Defendants to produce certain additional documents. To comply with the Court's orders, Defendants retrieved the files of several additional custodians from storage and undertook further document review. During the April 10, 2017 Status Conference, the parties reported to the Court on their discovery efforts, and discussed the status of the case and scheduling issues. Defendants reported that they were in the process of reviewing documents and would be producing additional documents to Plaintiffs. The parties agreed on a document production deadline of April 28, with both sides agreeing that they would then be in a position to complete depositions by June 2.

      In reviewing the files of these additional custodians, Defendants identified a number of documents that were responsive to Plaintiffs' document requests. Defendants made rolling productions of these documents before the production deadline, and complied with that deadline by making the final production electronically available on April 28. Notably, because Plaintiffs did not raise this issue until May 1, it appears that Plaintiffs did not even start reviewing documents as Defendants were making their rolling productions, but only began reviewing documents after the document production deadline had passed.

# PATUNAS LAW LLC

Hon. Douglas E. Arpert, U.S.M.J.
May 4, 2017
P a g e | **2**

Plaintiffs now appear to suggest that they need time to be able to print out and review each page of the new documents before they can move forward with depositions.  (*See* Letter at 1.)  Such manual review would be inefficient, to say the least.[1]  Nor is it necessary:  as Defendants' counsel advised Plaintiffs' counsel, many of these documents are duplicative of information that Defendants had previously produced[2] and/or are cumulative of information that was summarized in the reports that Defendants had provided to the FDA—reports which Plaintiffs have now had for months.  Moreover, the relevance of many of these documents (such as, for example, questions from individual consumers regarding the recall) to class certification purposes—the only thing that is at issue at this point in the case—is marginal at best.  Defendants nonetheless produced these documents to avoid any further dispute as to what documents should be produced, with the goal of finally moving this case forward.  But given the nature of this production, it simply is not the case that Plaintiffs need two additional months to pore through each page of every document before they can take a single deposition of Defendants' witnesses.

Plaintiffs' accusations that Defendants have improperly delayed document production are also all the more surprising because Plaintiffs themselves admit that they are *still* in the process of obtaining documents which Defendants have been requesting for months, if not more—documents that Plaintiffs admit will be produced (if at all) after the document production deadline, unlike Defendants' documents.  For example, Plaintiffs write that they are "still waiting to receive records from CVS for one of the plaintiffs."  (*Id.* at 3 n.4.)  There is absolutely no reason for Plaintiffs to have waited *years* after filing this case to obtain something as basic as proof-of-purchase pharmacy records for one of their class representatives—particularly because Defendants had asked for these documents in their First Set of Requests for Production of Documents, served close to a year ago on May 20, 2016.  Plaintiffs also write that they are just now "taking steps to obtain the plaintiffs' health insurance plans, which Your Honor *just* ordered us to produce if we have them."  (*Id.* (emphasis added).)  This Court certainly did not "just" order Plaintiffs to produce these documents, as they suggest; the Court in fact directed Plaintiffs to produce these documents four months ago, at the January 9, 2017 Status Conference.  (Tr. of Jan. 9, 2017 Status Conference at 61:4-7 ([COURT:] I'm satisfied that the request is not inappropriate, does not put an undue burden on the plaintiffs, and information related to their respective health plans should be

---

[1] Defendants provided these documents in industry-standard electronic format that can be loaded into a document management system—a basic tenet of modern ESI, designed to facilitate efficient and expeditious document review.  Defendants should not have to wait for Plaintiffs to spend weeks to manually print and review these documents.

[2] Plaintiffs acknowledge as much in their Letter.  (Letter at 2 n.1 ("The thousands of pages that the defendants just disclosed appear to include duplicates of some previously disclosed documents[.]").)  For example, about 350 of the documents produced are Recall Reports containing returns data, which was previously produced with the FDA reports.  About 850 documents are Recall Response forms, which were likewise previously produced with the FDA reports.  Additionally, a number of these documents consist of communications with individual customers regarding the Recall Response forms—communications that in Defendants' view are of marginal, if any relevance (in that the ultimate recall-related information related to these communications is already included in the final Recall Response forms), but which Plaintiffs have nonetheless demanded be produced.

# PATUNAS LAW LLC

Hon. Douglas E. Arpert, U.S.M.J.
May 4, 2017
P a g e | **3**

produced.").) Despite Plaintiffs' baseless assertions that "[t]he actions of the defendants have simply risen to the level of being unacceptable"(Letter at 3), the fact is that Defendants complied with document production deadlines—while Plaintiffs have not.

Finally, Plaintiffs' assertion that they still do not know Defendants' position as to Rule 30(b)(6) depositions (*see id.*) is also incorrect. Defendants served their Responses and Objections to Plaintiffs' Revised Notice of Rule 30(b)(6) Deposition on April 28. Those responses made clear on which topics Defendants will or will not produce Rule 30(b)(6) witnesses; contemporaneously with serving those Responses and Objections, Defendants also advised Plaintiffs that they anticipate making their Rule 30(b)(6) witnesses available during the week of May 22, 2017 (which would give Plaintiffs several weeks to review documents). Defendants are still prepared to offer their Rule 30(b)(6) witnesses during that week.

Defendants believe that no further extensions are warranted, and are prepared to move forward under the current schedule in order to avoid any further delays.

        Respectfully,

        */s/ Michael E. Patunas*

        Michael E. Patunas

cc:    All Counsel of Record (Via ECF)